(80 South. 185)

No. 22738.

STATE ex rel. DUGGAN v. CRANDELL, Register of State Land Office.

(May 27, 1918. Rehearing Denied Dec. 2, 1918.)

*(Syllabus by Editorial Staff.)*

1. PUBLIC LANDS 152—LANDS OF STATE—PRESCRIPTION OF FORMALITIES.

The state being at liberty to make such regulations as she pleases in the matter of the sale of her lands, if she has prescribed certain formalities for their purchase, such formalities must be observed before any party desiring to buy the lands can acquire any rights to or in connection with them.

2. PUBLIC LANDS 152 — DISPOSAL OF LANDS OF STATE—LOUISIANA—STATUTES.

Act No. 75 of 1880, §§ 3, 4, 5, Rev. St. § 2930, make it absolutely essential that application for purchase of public lands of the state should describe the land desired to be purchased by section, or part of section, township, and range.

3. PUBLIC LANDS 152—DISPOSAL OF LANDS OF STATE—APPLICATION NOT IN CONFORMITY WITH STATUTES—DEPOSIT—RIGHT SECURED.

Application to purchase public lands of the state, two islands which had never been offi-

cially surveyed and platted, not conforming to the requirements of Act No. 75 of 1880, §§ 3, 4, 5, and Rev. St. § 2930, accompanied by deposit of $15,000 to cover the price, since the area was unknown, secured to the applicant no right whatsoever.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Suit for injunction and mandamus by the State of Louisiana, on the relation of Thomas J. Duggan, against A. W. Crandell, Register of the State Land Office. From judgment of dismissal, the State appeals. Affirmed.

William J. Hennessey and Patrick F. Hennessey, both of New Orleans, Laycock & Beale, of Baton Rouge, and Dinkelspiel, Hart & Davey, of New Orleans, for appellant.

A. V. Coco, Atty. Gen., for appellee.

PROVOSTY, J. The relator, having made an application to the register of the state land office to purchase certain swamp lands of the state, and his application having been canceled after it had been received and filed, brings this suit to enjoin the register of the state land office from canceling his said application, and for mandamus to restore it, and to receive and accept as official a certain survey made after the application had been filed.

[1, 2] The state is, of course, at liberty to make such regulations as she pleases in the matter of the sale of her lands; and if she has prescribed certain formalities to be observed for the purchase of the lands, these formalities must, of course, be observed before any party desiring to buy the lands can acquire any rights to, or in connection with, them. As we read the statutes prescribing these formalities, they make it absolutely essential that the application for the purchase of these lands should describe the land desired to be purchased by section, or part of section, township, and range. These

statutes are Act 75, p. 85, of 1880 and section 2930 of Rev. Stat., which read:

"Sec. 3. That it shall be the duty of the register to keep accounts of the sales of lands donated ·to the state, in well bound books, with the number of the certificate issued therefor, setting forth the section, parts of sections, township and range, district and parish, to whom ·and when sold, and for what price, and shall cause to be marked on the official plats or maps on file in his office the number of certificate, which books and maps shall be preserved as official records.

"Sec. 4. That all money arising from the sale of warrants or public land shall be paid by the purchaser to the state treasurer, on the warrant of the auditor of public accounts, whose duty it shall be to warrant at once on the treasurer of the state to receive said money within forty-eight hours after the issuance of the same by the auditor.

"Sec. 5. That the register of the state land office shall, on the sale of lands or warrants, describe the same in his order on the treasurer of the state to receive the money for said lands, and in no case shall an entry be made upon the books, maps or other official record until the receipt of the treasurer, also describing the land or warrants, has been submitted and filed in his office; a violation of this section shall be deemed a felony, and upon conviction the party offending shall pay a fine of five thousand dollars and be imprisoned for a term not exceeding ten nor less than two years."

"Sec. 2930. (R. S.) The register of the state land office shall procure plats or maps of all swamp lands donated to Louisiana, certified to by the surveyor general, and shall mark thereon, on each tract of land purchased, the number of the certificate issued therefor, and shall keep a well bound book in his office, in which shall be entered, in proper form, all the lands thus sold, to whom sold, and for what price, which book and map shall be carefully preserved, and shall be deemed official records."

[3] The application of the relator described the land desired to be purchased as follows:

"Two islands, same being designated by the letters A and B in red ink on map hereto attached and made part hereof.

"Said (2) islands lying and being situate west of townships 9 and 10 S. range No. 13 W. La. principal meridian in the South West Land district of Louisiana, and situated in the parish of Calcasieu containing —— acres, at one dollar and fifty cents per acre, for the whole area of said two (2) islands."

The lands thus sought to be purchased had never been officially surveyed and platted, and hence it was impossible for relator to describe them by section, or part of section, township, and range; or to know the area. Not knowing what the area was, the relator deposited $15,000 with the state treasurer to cover the price.

It is very evident that such an application does not conform with the requirements of said statutes. It would have been impossible for the register of the state land office to act upon it. Nor is it pretended that he could. But the contention would seem to be that by such an application the applicant secures to himself some right. From what law such right would be derived we are not informed. According to the theory contended for, it would be possible to file a blanket application for all the unsold state lands in the state, and, by depositing with the state treasurer an amount sufficient to cover the price, secure an inchoate title to all the lands of the state subject to sale. But that mode of proceeding is manifestly not within the intendment of the said statutes. The register of the state land office would be entirely without authority to entertain an application of that kind, and by the filing of it the applicant would not secure to himself any right to the lands.

The judgment dismissing the suit is affirmed.